UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HANK ROUSE, on behalf of himself and others similarly situated, PLAINTIFF | Case No. _____ |
| V. | |
| T-MOBILE, USA, INC. DEFENDANT | NOVEMBER 8, 2023 |

## COMPLAINT

**I.  Introduction**

1. Under both state and federal law, employers must include commissions in the calculation of overtime for retail employees who receive commissions unless certain conditions are met, including that "more than half his compensation for a representative period (not less than one month) represents commissions on goods or services." Fair Labor Standards Act ("F.L.S.A."), 29 U.S.C.A. § 207(i); Illinois Minimum Wage Law ("I.M.W.L."), 820 Ill. Comp. Stat. Ann. 105/4a.

2. Under both state and federal law, employers must compensate workers for time designated as meal periods whenever the time is predominantly for the benefit of the employer. *Alexander v. City of Chicago*, 994 F.2d 333, 337 (7th Cir. 1993); 19 C.F.R. § 785.19(a).; Ill. Admin. Code tit. 56, § 210.110.

3. Here, Defendant T-Mobile USA, Inc. ("Defendant" or "T-Mobile") failed to fully compensate Hank Rouse and other similarly situated commissioned employees by failing to include their commissions in their regular rates of pay when calculating overtime.

1

4. Further, Defendant failed to compensate Rouse and other similarly situated employees for periods designated as meal periods when said periods were subject to frequent interruption and were predominantly for the employer's benefit.

5. Defendant also failed to act in good faith by failing to take active steps to learn and comply with these laws.

6. Plaintiff Hank Rouse, on behalf of himself and others similarly situated, now seeks damages for the harm caused by Defendants' unlawful conduct and wage theft, including but not limited to lost wages, liquidated damages, treble damages, interest, attorney fees, costs, and all other remedies available under state and federal law.

**II.    Parties**

7. Defendant is T-Mobile USA, Inc. ("Defendant" or "T-Mobile"), a telecommunications company incorporated in Delaware with its main headquarters at 12920 SE 38th Street, Bellevue, WA 98006, and registered to do business in the State of Illinois.

8. Defendant is an employer as that term is defined by the F.L.S.A. and Illinois state law. 29 U.S.C.A. § 203; 820 Ill. Comp. Stat. Ann. 105/3.

9. Plaintiff Hank Rouse ("Plaintiff" or "Rouse") is a resident of Chicago, Illinois, and was employed by Defendant T-Mobile at all relevant times hereto and classified as "sales" or sometimes referred to as a "Mobile Expert." (Opt-In Form attached hereto).

**III.    Jurisdiction and Venue**

10. This Court has federal question jurisdiction over Plaintiff's federal claims under the F.L.S.A. pursuant to 28 U.S.C. § 1331 and has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

11. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391.

2

**IV.    Facts**

12. Plaintiff worked for T-Mobile in "Sales" as a "Mobile Expert" from January 27, 2017 to October 3, 2023.

13. Plaintiff's work location was 6466 N Sheridan RD, Chicago, IL 60626 (designated by T-Mobile as store SAP9693), one of the many T-Mobile stores in Chicago, Illinois.

14. Plaintiff's duties as a Mobile Expert consisted of acting as a sales representative who worked on the floor in the store, assisting customers in-person at the store or over the telephone, responding to GroupMe/WhatsApp/Slack texts, scheduling, picking up devices, making telephone calls, performing overrides/exchanges, submitting reports, management calls, and/or Small Business Prep, and other duties as assigned.

15. Plaintiff earned an hourly rate of $17.50 per hour plus commissions from November 27, 2022 to the date of his termination on October 3, 2023. (Plaintiff had previously earned $16.50 per hour plus commissions from January 1, 2022 to November 26, 2022. Plaintiff earned $16 per hour plus commissions from February 7, 2021 to December 30, 2021. Before that, Plaintiff earned $15.50 per hour plus commissions.)

*A. Overtime Miscalculation and Underpayment*

16. Plaintiff at times worked more than forty hours per week. When he did, Defendant classified Plaintiff's compensation for those hours as overtime compensation and paid the hours at one and one-half times Plaintiff's regular rate without including commission earnings in the calculation of Plaintiff's regular rate.

17. For example, Plaintiff's last pay stub in 2021 reflects that Defendant classified $1,774.11 of his compensation for the year as overtime compensation. (At Plaintiff's rate of $16 / hour at that time, this would equate to 110.88 OT hours.)

3

18. For example, Plaintiff's last pay stub in 2022 reflects that Defendant classified $269.35 of his compensation as overtime compensation. (At Plaintiff's rate of $17.50 / hour at that time, this would equate to 15.39 OT hours.).

19. Plaintiff was paid an overtime rate by multiplying his hourly wage rate of pay by one and a half, but Plaintiff's commissions were not included in his regular rate for the purposes of calculating his overtime rate and overtime compensation.

20. For instance, for the two-week period from August 8, 2021 to August 21, 2021, Plaintiff earned $2,377.64, which included $906.89 in commissions, $1,279.84 in regular pay and $162.72 in overtime pay for 6.78 OT hours (at a regular rate of $16.00 and an overtime rate of $24.00).

21. Plaintiff's regular rate should have been calculated by totaling his agreed pay rate times the number of hours worked[1] plus all other compensation including commissions[2], and then dividing by total hours to yield a regular rate of $26.45[3], and an overtime rate of $39.68[4].

22. Plaintiff thus should have been paid $269.03[5] in overtime compensation and was thus underpaid $103.31[6] for this two-week period.

### B. Compensable Work Time Misclassified as Non-Compensable Meal Periods

23. Defendant usually assigned two workers to a store at a time, at least one of whom being designated as a "Keyholder."

24. Plaintiff was designated by Defendant as a "Keyholder" for his store on January 31, 2019, meaning when no other keyholder was onsite, he was solely responsible for any security

---

[1] Plaintiff's earnings at his agreed rate without overtime or commissions = [$16.00 x 86.78 hours = $1,388.48]
[2] Commissions are subdivided into several categories on the paystub, but they amount to $906.89.
[3] Correct regular rate = [($16.00 x 86.78 hours) + $906.89 commissions] / 86.78 hours = $26.45
[4] Correct OT rate = $26.45 x 1.5 = $39.68.
[5] Correct OT rate x OT hours = $39.68 x 6.78 = $269.03.
[6] Damages = OT Compensation owed – OT compensation paid = $269.03 – $162.72 = $103.31.

event or alarm, as well as required to remain onsite, available to answer questions, and assist other mobile experts in any capacity; the meal period was further restricted and limited by Defendant as follows:

    a. Keyholder was not allowed to insert personal listening devices (ear buds or similar) while consuming personal media while on meal break, as this would diminish his/her ability to hear any commotion on the sales floor that may require his/her immediate attention;

    b. Keyholder was required to listen for and be watchful as to any activity arising from the back door area;

    c. Keyholder was required to listen for and watchful as to any disturbance on the sales floor;

    d. Keyholder was required to listen for raised voices of customers or employees;

    e. Keyholder was required to listen for and watchful as to any loud crash (possible theft incident);

    f. Keyholder was required to be available to address any alarms (device or security);

    g. Keyholder was not permitted to nap;

    h. Keyholder was required to retrieve any phone/ device/ sim cards from the cage/safe as needed because these were located behind a locked door for which only the Keyholder had access; and

    i. Keyholder was not free to leave the premises for the entire 30-minute period to eat, shop, or spend the time at his/her discretion.

25.     Defendant's policy requires that at least one Keyholder, Manager, or Assistant Manager with alarm codes be working in the store from open to close every day for security

purposes and requires that two or more employees always be scheduled and present at the beginning and close of the shifts.

26. Individuals assigned as "Keyholders" are required to remain in the store and be available for customer assistance throughout the entirety of any period designated as a meal period unless there were other Keyholders present at the store.

27. Defendant gave their Mobile Experts financial incentive to immediately assist customers to the extent they would receive commissions for sales.

28. When Plaintiff would attempt to go on meal period, at a moment's notice, he was often interrupted by customers requesting assistance either at the store or by telephone, or by another non-keyholder employee.

29. During the times that Plaintiff was required as the only available Keyholder to remain in the store during his designated meal periods (which was approximately 25% of Plaintiff's meal periods), Plaintiff was interrupted frequently (there were approximately 250 meal period interruptions Plaintiff counted from April of 2021 to March of 2023).

30. The length of the interruptions would almost always be more than five minutes, and they very often ranged from a half-hour to an hour in duration.

31. Upon receiving a request for customer assistance, Defendant's policy for its employees was to immediately punch back in, assist the customer (whether it be in person or by phone), and then punch back out again.

32. Defendant's policy is also that its employees must take a meal period whenever it is possible to do so (depending on the length of the shift).

33. Defendant's policy is for all employees to accurately record all time worked and not perform "off the clock" work.

34. To avoid interrupted employee meal periods, Defendant's purported policy is for an Assistant Store Manager, salaried Store Manager, or District Manager to arrange for a 3rd party to visit the store and provide coverage, but Defendant almost invariably neglects this policy.

35. When Plaintiff was interrupted by requests for customer assistance and did not have a meal period, he would accurately report his hours and all his time.

36. Defendant retaliated against Plaintiff for not taking "required" lunch breaks, despite that Plaintiff was also required to promptly respond to customer requests for assistance and report his time accurately.

37. For instance, on October 1, 2021, Defendant retaliated against Plaintiff during a "formal" discussion in which he was critiqued for not taking meal periods—time that Plaintiff claimed to have been responding to customer requests for assistance and thus working.

38. From October 19, 2021 to November 1, 2021, Plaintiff contended that for time that he was the only Keyholder on shift, Defendant's policy was noncompliant with the F.L.S.A., citing what he deemed to be relevant federal regulations.

39. November 17, 2021, Defendant continued retaliating against Plaintiff by issuing a disciplinary "Formal Discussion" document (47 days after the discussion date October 1st, 2021) which disciplined Plaintiff for various supposed offenses including that he was not "clocking in and out for lunch times."

40. On June 8, 2022, Defendant again retaliated against Plaintiff for accurately reporting his working time when he was unable to take a meal period, characterizing the supposed violation as having, "continued to not follow company guidelines for clocking in and out for lunch breaks."

41. It is Defendant's *de facto* policy to retaliate against employees who accurately report their working time and challenge the inaccurate designation of working time as non-compensable meal periods.

42. Defendant's unlawful conduct was not in good faith in that it did not take active steps to learn the law and did not take active steps to comply with the law, willfully and recklessly disregarding the rights of Plaintiff and others similarly situated.

43. Defendant's unlawful conduct has been the direct and proximate cause of wage theft committed against Plaintiff and other similarly situated employees of the Defendant, causing harm and damages including but not limited to lost wages, lost interest, attorney fees, and costs.

**V.    Class Allegations**

44. Plaintiff proposes the following two class definitions for class claims brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, subject to amendment upon filing Plaintiff's motion for class certification:

   a. All of Defendant's non-exempt employees who received commissions and overtime, but for whom commissions were not included in the calculation of overtime, such that overtime hours were underpaid, from three years before the filing of the complaint to the date of final judgment in this matter.

   b. All of Defendant's employees who were designated Keyholders and were unable to take meal periods, but had time incorrectly designated as meal periods, such that their hours were not paid, from three years prior to the filing of the complaint to the date of final judgment in this matter.

45. Plaintiff Hank Rouse is an adequate class representative with no interests antagonistic to or in conflict with the putative classes he seeks to represent, and he will fairly and

adequately protect the interests of the class, and class counsel is skilled in the prosecution of class actions.

46. The class is so numerous that joinder of all members is impracticable. On information and belief, there are more than forty (40) individuals employed by Defendants in the proposed classes during the relevant period.

47. There are questions of law and fact common to the class, including whether the Defendants unlawfully failed to fully compensate putative class members for all working hours in violation of the F.L.S.A. and state law.

48. The claims of the Plaintiff are typical of those of the class members. The claims of Plaintiff encompass the challenged policies and *de facto* policies of the Defendant. Furthermore, the claims of the Plaintiff are based on the same legal theories as the claims of the putative class members. The legal issues as to the violation of the F.L.S.A by Defendant's conduct applies equally to Plaintiff and to the putative classes.

49. Common questions of law and fact predominate over questions affecting only individuals.

50. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. This proposed class action is the superior method of adjudications because it presents few management difficulties, conserves the resources of the parties and the court system, protects the rights of each class member and maximizes recovery to them.

**VI. Count One – F.L.S.A. Overtime Commission Claims**

1-50. Paragraphs 1 – 50 are hereby incorporated as if more fully set forth herein.

51. Defendant's conduct in failing to include commissions in the calculation of overtime has caused harm to Plaintiff Hank Rouse and the commissions overtime class, including

9

but not limited to lost wages because of Defendant's failure to fully compensate its commissioned employees. F.L.S.A., 29 U.S.C.A. § 207.

52. Defendant's conduct in this regard was a willful violation of the F.L.S.A. in that Defendants knew or should have known that it was required to include commissions in the calculation of overtime compensation, but failed to do so, resulting in underpayment of overtime compensation to Plaintiff Rouse and other commissioned employees similarly situated.

53. Plaintiff, on behalf of himself and others similarly situated, hereby claim damages for Defendant's violations of F.L.S.A., 29 U.S.C.A. § 207, including but not limited to lost wages, liquidated damages, attorney fees and court costs.

### VII. Count Two – F.L.S.A. Meal Period Claims

1-50. Paragraphs 1 – 50 are hereby incorporated as if more fully set forth herein.

51. Defendant's conduct in unlawfully designating compensable working time (predominantly for the employer's benefit) as non-compensable meal periods has caused harm to Plaintiff Hank Rouse and the meal period claims class, including but not limited to lost wages because of Defendant's failure to fully compensate its employees. F.L.S.A., 29 U.S.C.A. § 207.

52. Defendant's conduct in this regard was a willful violation of the F.L.S.A. in that Defendants knew or should have known that it was required to compensate employees for time worked (predominantly for the employer's benefit), but failed to do so, resulting in underpayment of overtime compensation to Plaintiff Rouse and other employees similarly situated.

53. Plaintiff, on behalf of himself and others similarly situated, hereby claim damages for Defendant's violations of F.L.S.A., 29 U.S.C.A. § 207, including but not limited to lost wages, liquidated damages, attorney fees and court costs.

### VIII. Count Three – Illinois Overtime on Commission Claims

1-50. Paragraphs 1 – 50 are hereby incorporated as if more fully set forth herein.

51. Defendant's conduct in failing to include commissions in the calculation of overtime has caused harm to Plaintiff Hank Rouse and the commissions overtime class, including but not limited to lost wages because of Defendant's failure to fully compensate its commissioned employees. I.M.W.L., 29 U.S.C.A. § 207.

52. Defendant's conduct in this regard was a willful violation of the I.M.W.L. in that Defendants knew or should have known that it was required to include commissions in the calculation of overtime compensation, but failed to do so, resulting in underpayment of overtime compensation to Plaintiff Rouse and other commissioned employees similarly situated.

53. Plaintiff, on behalf of himself and others similarly situated, hereby claim damages for Defendant's violations of I.M.W.L., 820 Ill. Comp. Stat. Ann. 105/4a, including but not limited to lost wages, treble damages, attorney fees and court costs.

**IX.    Count Four – Illinois Meal Period Claims**

1-50. Paragraphs 1 – 50 are hereby incorporated as if more fully set forth herein.

51. Defendant's conduct in unlawfully designating compensable working time (predominantly for the employer's benefit) as non-compensable meal periods has caused harm to Plaintiff Hank Rouse and the meal period claims class, including but not limited to lost wages because of Defendant's failure to fully compensate its employees. Ill. Admin. Code tit. 56, § 210.110.

52. Defendant's conduct in this regard was a willful violation of the Illinois Minimum Wage Law in that Defendants knew or should have known that it was required to compensate employees for time worked (predominantly for the employer's benefit), but failed to do so,

resulting in underpayment of overtime compensation to Plaintiff Rouse and other employees similarly situated.

53. Plaintiff, on behalf of himself and others similarly situated, hereby claims damages for Defendant's violations of Ill. Admin. Code tit. 56, § 210.110., including but not limited to lost wages, treble damages, attorney fees and court costs.

### X. Demand for Relief

Wherefore, Plaintiff claims, individually and on behalf of all other similarly situated persons:

a. That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have been at any time during the three years immediately preceding the filing of this suit, employed by Defendants in commissioned or Keyholder positions. Such notice shall inform them that this civil action has been filed, the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

b. Certification of this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of members of the Illinois classes and the appointment of Plaintiff and their counsel to represent the classes;

c. Unpaid overtime wages under the FLSA;

d. Unpaid overtime wages under state law;

e. Withheld wages under state law;

f. Liquidated damages under the F.L.S.A.;

g. Treble damages under Illinois state law;

h. Pre-Judgment and post-Judgment interest under state and federal law;

i. Attorneys' fees and costs under the F.L.S.A. and state law;

j. Trial by jury; and

k. Such other and further relief as the Court deems just and equitable.

**THE PLAINTIFF,
HANK ROUSE**

By: **/s/ Sergei Lemberg**

**Sergei Lemberg, Esq.**

**Michael T. Petela, Jr., Esq. (Pro Hac Vice application pending)**

**Lemberg Law, LLC
444 North Michigan Avenue, Suite 1200
Chicago, IL 60611
T: 203-653-2250
F: 203-653-3424
slemberg@lemberglaw.com
mpetela@lemberglaw.com
www.lemberglaw.com**